## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

|  |  |  |
|---|---|---|
| GASP, CLEAN AIR COUNCIL, HOOSIER ENVIRONMENTAL COUNCIL, JUST TRANSITION NORTHWEST INDIANA, PANIC, PENNFUTURE, and SIERRA CLUB, | ) ) ) ) ) ) | |
| *Petitioners*, | ) ) | Case No. 25-1166 |
| v. | ) ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency, | ) ) ) ) | |
| *Respondents*. | ) ) | |

_____

**PROPOSED OPPOSITION OF MOVANT INTERVENOR-RESPONDENTS SUNCOKE ENERGY, INC., AMERICAN COKE AND COAL CHEMICALS INSTITUTE, AND COKE OVEN ENVIRONMENTAL TASK FORCE TO PETITIONERS' MOTION FOR SUMMARY VACATUR OR, IN THE ALTERNATIVE, A STAY PENDING JUDICIAL REVIEW**

Jeffrey A. Knight
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
jeffrey.knight@pillsburylaw.com
(202) 663-8000

*Counsel for Movant Intervenor-Respondents American Coke and Coal Chemicals Institute and Coke Oven Environmental Task Force*

Matthew Z. Leopold
E. Carter Chandler Clements
Erica N. Peterson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
mleopold@hunton.com
eclements@hunton.com
epeterson@hunton.com
(202) 955-1500

*(Additional counsel listed on following page)*

Elbert Lin
HUNTON ANDREWS KURTH LLP
951 East Byrd Street, East Tower
Richmond, Virginia 23219
elin@hunton.com
(804) 788-8200

*Counsel for Movant Intervenor-Respondent SunCoke Energy, Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A), Movant Intervenor-Respondents state as follows:

## A. Parties, Intervenors, and *Amici Curiae*

Petitioners: Petitioners in this case are Clean Air Council, GASP, Hoosier Environmental Council, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club.

Respondents: Respondents in this case are the United States Environmental Protection Agency ("EPA" or "Agency") and Lee Zeldin, Administrator, U.S. Environmental Protection Agency.

Intervenors: SunCoke Energy, Inc. ("SunCoke") and American Coke and Coal Chemicals Institute ("ACCCI") and Coke Oven Environmental Task Force ("COETF") are Movant-Intervenors in Support of Respondents.

*Amici Curiae*: There are no *amici curiae* in this case as of the time of this filing.

## B. Rulings Under Review

This case involves an EPA interim final rule titled "National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review," published at 90 Fed. Reg. 29,997 (July 8, 2025).

**C. Related Cases**

Movant Intervenor-Respondents SunCoke, ACCCI, and COETF are not aware of any other petition for review of the EPA action at issue in the present case.

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

TABLE OF AUTHORITIES ....................................................................................iv

INTRODUCTION ............................................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT .....................................................................................................3

I.      Summary Vacatur Is Not Warranted. ............................................................3

      A.      Petitioners Do Not Meet the High Standards for Summary
            Vacatur. .........................................................................................3

      B.      "Good Cause" Exists to Justify the Agency's Issuance of the
            IFR Without a Notice-and-Comment Period. .......................................5

            1.      EPA had good cause because notice and comment would
                    impede the Agency's function. ....................................................6

            2.      EPA had good cause to issue the IFR because the entire
                    cokemaking industry would be imperiled without the
                    IFR.............................................................................................7

            3.      Petitioners' argument that good cause exists only in
                    emergency situations is an incorrect reading of this
                    Court's case law. .......................................................................8

II.     Petitioners' Request for a Stay Should Be Denied.......................................10

      A.      Petitioners Are Not Likely to Succeed on the Merits. .........................10

      B.      Petitioners Cannot Show Irreparable Harm. ......................................15

      C.      The Public Interest and the Balance of Equities Do Not Favor a
            Stay. ...............................................................................................17

CONCLUSION ...............................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................................21

CERTIFICATE OF SERVICE ...........................................................................21

# TABLE OF AUTHORITIES

*Aamer v. Obama*,
    742 F.3d 1023 (D.C. Cir. 2014) ....................................................................17

*Am. Fed'n of Gov't Emps., AFL-CIO v. Block*,
    655 F.2d 1153 (D.C. Cir. 1981) ....................................................................7

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) ....................................................................15, 16, 19

*Cascade Broad. Grp., Ltd. v. FCC*,
    822 F.2d 1172 (D.C. Cir. 1987) ....................................................................4

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) ....................................................................15

*Council of the S. Mountains, Inc. v. Donovan*,
    653 F.2d 573 (D.C. Cir. 1981) ....................................................................6

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985) ....................................................................10

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) ....................................................................12, 13, 14

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ....................................................................12, 14

*In re Naval Chaplaincy*,
    534 F.3d 756 (D.C. Cir. 2008) ....................................................................17

*Jifry v. FAA*,
    370 F.3d 1174 (D.C. Cir. 2004) ....................................................................9

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) ....................................................................9

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...........................................................15

*Mack Trucks, Inc. v. EPA*,
    682 F.3d 87 (D.C. Cir. 2012) ....................................................7, 8, 9

*Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) ..............................................15, 16

*Mid-Tex Elec. Coop. v. FERC*,
    822 F.2d 1123 (D.C. Cir. 1987) ............................................1, 5, 9

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.*
    *Auto. Inc. Co.*,
    463 U.S. 29 (1983) .................................................................11, 12

*Nat'l Treasury Emps. Union v. Vought*,
    No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ........................10

*Nat'l Wildlife Fed'n v. Burford*,
    835 F.2d 305 (D.C. Cir. 1987) ....................................................15

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................17

*Ohio v. EPA*,
    603 U.S. 279 (2024) ....................................................................9

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    590 U.S. 212 (2020) ..................................................................10

*Sills v. Bureau of Prisons*,
    761 F.2d 792 (D.C. Cir. 1985) .......................................................4

*Sorenson Commc'ns Inc. v. FCC*,
    755 F.3d 702 (D.C. Cir. 2014) .......................................................7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .............................................................16, 17

*United States v. Allen*,
    408 F.2d 1287 (D.C. Cir. 1969) .......................................4

*United States v. Neely*,
    124 F.4th 937 (D.C. Cir. 2024) .....................................10

*Util. Solid Waste Activities Grp. v. EPA*,
    236 F.3d 749 (D.C. Cir. 2001) ........................................6

*Walker v. Washington*,
    627 F.2d 541 (D.C. Cir. 1980) ........................................4

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...............................................10, 17

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ...................................15, 17

## FEDERAL STATUTES

5 U.S.C. § 553(b)(B).......................................................5

42 U.S.C. § 7412(f).......................................................3

42 U.S.C. § 7412(i)(3)(A)..............................................3, 11

## FEDERAL REGULATIONS

40 C.F.R. pt. 63, subpt. CCCCC...........................................2

40 C.F.R. pt. 63, subpt. L ..............................................2

## FEDERAL REGISTER

89 Fed. Reg. 55,684 (July 5, 2024)................................1, 3, 14

90 Fed. Reg. 24,199 (June 9, 2025).......................................19

90 Fed. Reg. 29,997 (July 8, 2025)....................... 1, 3, 5, 6, 7, 11, 12, 13, 14, 16, 18

# INTRODUCTION

This case is not as simple or urgent as Petitioners claim it to be. As an initial matter, summary vacatur is an extraordinary remedy reserved for situations where vacatur is compelled by directly applicable precedent. Petitioners point to no such controlling precedent here. Instead, they attempt to read into this Court's cases a rule that the good cause exception from notice-and-comment procedures applies only to emergency situations. That is wrong. This Court's cases make clear that "good cause" is a "fact- or context-dependent" inquiry. *Mid-Tex Elec. Coop. v. FERC*, 822 F.2d 1123, 1132 (D.C. Cir. 1987). So at a minimum, this Court should deny summary vacatur and allow plenary briefing and oral argument.

This Court should also deny Petitioners' request for a stay pending review. Petitioners claim that EPA's decision was arbitrary and capricious because EPA failed to explain its decision to delay the deadlines. But EPA did provide a reasonable explanation. The interim final rule at issue here[1] is necessary to set new compliance deadlines for limits on coke oven emissions[2] because compliance with

---

[1] "National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review," 90 Fed. Reg. 29,997 (July 8, 2025) ("IFR").

[2] "National Emission Standards for Hazardous Air Pollutants for Coke Ovens: Pushing, Quenching, and Battery Stacks, and Coke Oven Batteries; Residual Risk and Technology Review, and Periodic Technology Review," 89 Fed. Reg. 55,684 (July 5, 2024) ("2024 Final Rule").

the original deadlines would be impossible. Therefore, Petitioners are not likely to succeed on the merits, and the stay should be denied for this reason alone.

Petitioners also provide no support for their claim of irreparable harm. They offer no evidence supporting their speculative claim of harm if the IFR is not stayed, much less why such unsupported harm is imminent or cannot be remedied at the close of litigation. Indeed, granting a stay of the IFR will provide Petitioners no immediate benefit because—irrespective of the stay—compliance with the 2024 Final Rule's emission limits is simply and literally not possible for three years.

Finally, the balance of the equities further favors denying the stay. While Petitioners' harms are speculative and unsupported, the cokemaking industry, including Movant-Intervenors, will suffer concrete harm in the form of millions of dollars in compliance costs  and penalties for non-compliance if the IFR is stayed. At a minimum, the IFR should remain effective to avoid throwing an entire industry into non-compliance while this Court considers the IFR further.

## BACKGROUND

EPA promulgated the first emission limits for the "Coke Oven Batteries" category in 1993. *See* 40 C.F.R. pt. 63, subpt. L. In 2003, EPA promulgated additional emission limits for the "Coke Ovens Pushing, Quenching, and Battery Stacks" ("PQBS") category. *See* 40 C.F.R. pt. 63, subpt. CCCCC. On July 5, 2024, EPA promulgated the 2024 Final Rule, which finalized EPA's residual risk review

for the PQBS category (Subpart CCCCC) and finalized technology reviews for both the PQBS category and the Coke Oven Batteries category (Subpart L).

In the 2024 Final Rule EPA made a determination under Clean Air Act ("CAA") § 112(f), 42 U.S.C. § 7412(f), that emissions associated with the PQBS category present acceptable risk to public health and the environment with an ample margin of safety. *See* 89 Fed. Reg. at 55,686. Nevertheless, EPA promulgated 21 new "maximum achievable control technology" ("MACT") standards, tightened existing standards for leaks from coke ovens, and imposed new coke facility fenceline emission monitoring and corrective action requirements. Although CAA § 112(i)(3)(A), 42 U.S.C. § 7412(i)(3)(A), authorizes up to three years for compliance, the 2024 Final Rule set short 12- and 18-month compliance deadlines for fenceline monitoring requirements and the new MACT limits, respectively. *See* 89 Fed. Reg. at 55,722. On July 8, 2025, EPA promulgated the IFR setting new compliance deadlines in July 2027 for the new requirements on both the fenceline monitoring and MACT limits. *See* 90 Fed. Reg. at 29,997.

## ARGUMENT

### I. Summary Vacatur Is Not Warranted.

#### A. Petitioners Do Not Meet the High Standards for Summary Vacatur.

Summary disposition is extraordinary, usually reserved for resolution in favor of *respondents* or *appellees*. "[A] party bears a heavy burden of showing that

summary disposition is appropriate." *Sills v. Bureau of Prisons*, 761 F.2d 792, 793 (D.C. Cir. 1985). The outcome must be "so clear [that] plenary briefing, oral argument, and the traditional collegiality of the decisional process would not affect [the Court's] decision." *Id.* at 793–94; *Cascade Broad. Grp. Ltd. v. FCC*, 822 F.2d 1172, 1174 (D.C. Cir. 1987) (per curiam) (same standard for review of agency action). Accordingly, summary disposition ordinarily is granted in the form of summary affirmance to *respondents or appellees* facing a frivolous appeal. *See, e.g., Walker v. Washington*, 627 F.2d 541, 546 (D.C. Cir. 1980) (per curiam) (claims were "clearly frivolous").

When *petitioners* seek summary disposition, they face an even higher bar because they must address *both* merits and remedy. Although "[s]ummary affirmance is appropriate where the merits are so clear as to justify summary action," D.C. Cir., Handbook of Practice and Internal Procedures at 36 (Aug. 11, 2025) ("D.C. Cir. Handbook"), "[a] party seeking summary reversal by motion has the heavy burden of demonstrating both that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expedited action," *United States v. Allen*, 408 F.2d 1287, 1288 (D.C. Cir. 1969) (per curiam). Thus, "[s]ummary reversal is rarely granted." D.C. Cir. Handbook at 36.

Petitioners cannot meet this high standard. As explained below in Section II.A, the merits are hardly "so clear as to justify summary action." *Id.* As this Court

has held previously, determining whether the good cause exception applies when an agency deems notice and comment impracticable "is inevitably fact- or context-dependent." *Mid-Tex Elec. Coop.*, 822 F.2d at 1132. That case-by-case standard is particularly ill-suited for summary disposition, barring precedent granting summary vacatur under virtually identical circumstances. Petitioners have identified no such precedent here. In addition, as explained below in Section II.B-C, Petitioners' proposed remedy suffers from significant deficiencies. Summary vacatur of the IFR would do little more than place Movant-Intervenors into non-compliance with the 2024 Final Rule, while doing nothing to address any harm to Petitioners (as they have identified none).

**B.** **"Good Cause" Exists to Justify the Agency's Issuance of the IFR Without a Notice-and-Comment Period.**

The Administrative Procedure Act ("APA") allows an agency to issue a final rule before engaging in notice-and-comment procedures when the agency determines "for good cause" that notice and comment would be "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). Here, EPA found that notice and comment prior to issuing the IFR was "impracticable" due to the infeasible compliance deadlines that EPA acknowledged would place regulated entities into immediate non-compliance. *See* 90 Fed. Reg. at 30,002. Specifically, EPA found that compliance with the deadlines under the 2024 Final Rule was

impossible would impede EPA's function to regulate and would imperil the cokemaking industry by throwing it into immediate non-compliance.

### 1. EPA had good cause because notice and comment would impede the Agency's function.

Notice and comment may be excused "'when an agency finds that due and timely execution of its functions would be impeded by the notice [and comment procedures] otherwise required in'" the APA. *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) (citation omitted). One such circumstance, this Court has held, is when an agency learns too late that compliance is not feasible. *See Council of the S. Mountains, Inc. v. Donovan*, 653 F.2d 573 (D.C. Cir. 1981) (agency interim rule upheld when circumstances justifying delay occurred too late to properly implement a notice-and-comment period). Here, as EPA explained, it would be impossible for the Agency to complete its revisions of the 2024 Final Rule under consideration or for the industry to comply with the new standards by the July 7, 2025 deadline. *See* 90 Fed. Reg. at 30,002.

Petitioners argue that EPA could have begun rulemaking in September 2024 when industry filed petitions for reconsideration. Pet'rs' Mot. 12–13. However, EPA cited multiple documents and sources of information it did not receive until May 2025 supporting its finding that compliance was impossible, and notice and comment was impracticable to remedy the issue. In particular, EPA cited an email from COETF dated May 22, 2025 describing steps needed to comply with the 2024

Final Rule and explaining that each step would take at least six months to a year. *See* 90 Fed. Reg. at 30,001 n.9. Likewise, SunCoke met with EPA on May 20, 2025, to explain similar significant problems regarding its ability to comply with deadlines under the 2024 Final Rule. This information alerted EPA to the fact that compliance was impossible and prompted the need to establish new compliance deadlines.

> ### 2. EPA had good cause to issue the IFR because the entire cokemaking industry would be imperiled without the IFR.

EPA also independently had good cause to issue the IFR because the 2024 Final Rule would so impact the cokemaking industry such that "an entire industry and its customers were imperiled." *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012); *see Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153 (D.C. Cir. 1981) (finding good cause existed when an industry was placed in peril by changing regulations, recognizing that confusion would cause "economic harm and disruption" that justified emergency regulations). Financial concerns can provide good cause for an interim final rule if those concerns rise to the level of "a crisis." *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706-07 (D.C. Cir. 2014). EPA published the IFR to prevent the entire cokemaking industry being deemed out of compliance with impossible-to-meet requirements under the 2024 Final Rule. Allowing an entire industry to fall out of compliance with new, exceedingly strict standards currently under review by the Agency would cause confusion among cokemaking companies and their customers, the steelmaking industry, and imperil

both industries and related markets. Metallurgical coke is an essential ingredient used in blast furnace production of steel, and regulatory confusion hampering coke production would significantly impact the American steel industry's ability to manufacture steel. A decline in the steel industry's productivity due to lack of coke production would have significant effects on U.S. supply chains and national security interests, causing significant disruption across the economy.

As EPA correctly found, routine notice and comment was an impracticable hurdle to remedy the peril to the cokemaking industry absent the IFR. Accordingly, good cause existed for EPA to delay the 2024 Final Rule's deadlines immediately while the notice-and-comment process takes place.

### 3. Petitioners' argument that good cause exists only in emergency situations is an incorrect reading of this Court's case law.

Petitioners argue that the "good cause" exception may be invoked *only* in emergencies, when "there is an 'imminent' threat to human lives or property or a rule is of 'life-saving importance.'" Pet'rs' Mot. at 11 (citing *Mack Trucks,* 682 F.3d at 93). Although this Court has found particular emergency situations are *sufficient* to support a finding of good cause, Petitioners' assertion that such emergencies are *necessary* to support good cause overstates this Court's precedent and runs contrary to the plain text of the APA.

A court's inquiry into the impracticability of notice and comment "is inevitably fact- or context-dependent." *Mid-Tex Elec. Coop.*, 822 F.2d at 1132. In *Mack Trucks*, this Court identified examples of situations in which it found impracticability existed because of an imminent hazard to persons and property. *See* 682 F.3d at 93. The Court preceded this discussion, however, by stating it invoked such scenarios "[f]or the sake of comparison" rather than to delineate an exhaustive list. *Id.* Further, this Court has specifically held that the good cause exception "excuses notice and comment in emergency situations, *or* where delay could result in serious harm." *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (citations omitted) (emphasis added). In short, Petitioners' "emergencies-only" view of the good cause exception misreads this Court's precedent.

Imposing an "emergencies-only" requirement on the good cause exception runs contrary to this Court's precedent in *Util. Solid Waste Activities Grp.*, *Block*, and *Mack Trucks*. To endorse the Petitioners' proposition and grant summary vacatur based on their interpretation of the case law would effectively overturn multiple decisions reached by previous panels of this Court. This exceeds the scope of this Court's authority, as one panel of the D.C. Circuit may not overturn another, as that power may only be exercised by the full court. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996).

In addition, Petitioners' interpretation misreads the text of the APA, imposing an "emergencies-only" standard for the good cause exception where the statute lacks such language. Where the text is silent, "the Court does not 'read into statutes words that aren't there[.]'" *United States v. Neely*, 124 F.4th 937, 943 (D.C. Cir. 2024) (quoting *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020)).

## II.     Petitioners' Request for a Stay Should Be Denied.

This Court should also refuse to stay the IFR. Petitioners must establish: (1) they are likely to succeed on the merits; (2) they will be irreparably harmed absent a stay; (3) the balance of equities tips in their favor; and (4) the public interest favors a stay. *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It is not settled in this Circuit whether *Winter* precludes a sliding scale in which an unusually strong showing on one factor can overcome weaker factors. *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *4 (D.C. Cir. Aug. 15, 2025). In any event, Petitioners cannot meet their burden.

### A.     Petitioners Are Not Likely to Succeed on the Merits.

As explained above, Petitioners are unlikely to succeed on their claim that EPA's use of the good cause exception was unlawful.

Petitioners are also unlikely to succeed on their claim that the compliance dates in the IFR are arbitrary and capricious. The "standard is narrow and a court is

not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This Court must uphold a regulation so long as "the agency . . . examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* Agency action is arbitrary and capricious only

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* Petitioners raise two arbitrary and capricious arguments, both of which fail.

First, Petitioners argue the IFR is arbitrary and capricious because EPA failed to apply the statutory requirement to "'provide for compliance as expeditiously as practicable.'" Pet'rs' Mot. 14 (quoting 42 U.S.C. § 7412(i)(3)(A)). Their argument boils down to a complaint that EPA cited subsection (B) rather than subsection (A) and never quoted the "as expeditiously as practicable" language. The arbitrary and capricious standard does not insist on such extreme formalism. *See State Farm*, 463 U.S. at 43. EPA explained that it agreed with the COETF's assessment that "3 years are *needed* to comply with the limits." 90 Fed. Reg. at 30,002 (emphasis added). EPA explained that the information provided by COETF outlined seven steps that industry must undertake to comply and indicated that each step would take at least

six months, with most taking more than a year. *Id.* at 30,001–02 & n.9. EPA also explained that while some of the steps can overlap, "some can only be performed sequentially." *Id.* at 30,001. In addition, EPA noted that "[t]he lead time to engineer, procure, fabricate, and install replacement offtake components on a typical battery is at least 2 to 3 years." *Id.* at 30,002. Based on those factual findings, EPA concluded that "two to three years is *required* for compliance." *Id.* (emphasis added). EPA considered the factors Congress intended it to consider—the amount of time necessary for compliance—and provided a reasoned explanation for its choice. That is all that the arbitrary and capricious standard requires. *See State Farm*, 463 U.S. at 43.

Second, Petitioners argue that EPA's decision is arbitrary and capricious because EPA previously rejected industry requests for extensions and failed to provide a reasoned explanation for its change in position. *See* Pet'rs' Mot. 15. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The agency must "'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

As an initial matter, Petitioners are wrong that EPA changed its position. They say that in March 2025, EPA rejected industry petitions for extensions of the

compliance dates. *See* Pet'rs' Mot. 16. But the only evidence they cite undermines their argument. Petitioners cite EPA's statement in the IFR that it sent letters to three companies stating that "'they did not provide enough information to determine whether the compliance date extensions were warranted.'" *Id.* at 16 (quoting 90 Fed. Reg. at 30,001). But that establishes only that EPA requested more information, not that EPA denied the petitions. Indeed, EPA made no findings or conclusions that the extensions were not warranted with respect to the three petitions lacking information, nor to the other industry petitions. In fact, EPA's requests for additional information were later withdrawn. 90 Fed. Reg. at 30,001.

Regardless, even if EPA had changed its position as Petitioners claim, they are incorrect that EPA failed to justify a change in position. Petitioners assert that the IFR does not present any new data that the Agency received after March 2025. *See id.* at 16. To the contrary, the IFR discusses COETF's May 2025 email detailing the steps necessary for compliance and the amount of time each step requires. *See* 90 Fed. Reg. at 30,001–02 & n.9. EPA explained that this information supported a three-year compliance deadline because five of the seven steps require more than a year to complete and many of the steps must be completed sequentially. *See id.* at 30,001–02. Further, SunCoke met with EPA officials in May 2025 to discuss the impossibility of complying with the deadlines established in the 2024 Final Rule. EPA thus provided a "reasoned explanation" for its change in position, *Encino*

*Motorcars*, 579 U.S. at 221, by identifying and discussing new data supporting its changed position.

Petitioners also argue that EPA already considered and rejected industry concerns about using "annual average leak rate data" to calculate leak limits and failed to explain its change in position. Pet'rs' Mot. 17–18 (citing 89 Fed. Reg. at 55,696). Again, EPA reasonably explained this change in position. EPA explained that the annual average leak rate data did not reflect raw material, meteorological, and process variability, creating uncertainty as to whether the 2024 Final Rule emission limits could be achieved on a consistent basis. *See* 90 Fed. Reg. at 30,002. This Court need not agree that "the reasons for the new policy are *better*," as long as "there are good reasons for it[] and that the agency *believes* it to be better," EPA's burden is satisfied. *Fox Television*, 556 U.S. at 515 (emphasis in original). Further, this Court does not require an agency to identify new information or data as justification for a changed position so long as the agency meets its burden of providing a "reasoned explanation" for the change. *Encino Motorcars*, 579 U.S. at 221. EPA met that standard by explaining why uncertainty in the leak rate data supported an extension of the deadlines, regardless of when the data was made available to the Agency.

### B. Petitioners Cannot Show Irreparable Harm.

"This court has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "Such injury must be 'both certain and great,' 'actual and not theoretical,' 'beyond remediation,' and 'of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (citation omitted); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016). Irreparable injury cannot be presumed from an alleged violation of environmental law. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544–45 (1987); *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 324 (D.C. Cir. 1987). "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.'" *Wis. Gas Co v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (citation omitted).

Petitioners do not meet this standard. Petitioners' allegations of harm from coke oven emissions are speculative and theoretical at best. As an initial matter, Petitioners provide no evidence to support their claim that their members will suffer harm from coke oven emissions. *See id.* (explaining that a movant must "substantiate the claim that irreparable injury is 'likely' to occur" and provide more than "[b]are allegations"). Instead, they baldly assert, with no support, that coke oven emissions

will harm them. *See* Pet'rs' Mot. 19–20. But that does not establish actual, rather than theoretical, harm to Petitioners or their members, nor does it establish that such harm is imminent. *See Mexichem*, 787 F.3d at 555. Tellingly, Petitioners provide no timeframe for when such alleged harm will occur. For all this Court knows, it could occur many years from now, long after this litigation has concluded. Petitioners would have this Court presume injury from the mere fact that coke ovens emit pollutants, something that the Supreme Court has rejected. *See Amoco Prod.*, 480 U.S. at 544–45.

Moreover, even if Petitioners could establish their claim of harm from continued emissions, they cannot show that a stay would remedy such harm. As EPA explained, if the 2024 Final Rule's July 2025 and January 2026 compliance deadlines go back into effect, it would "throw[] regulated parties into immediate non-compliance" because the standards cannot be met on the timeline required. 90 Fed. Reg. at 30,002. That means that coke oven emissions would continue regardless of a stay and that a stay would do nothing to remedy Petitioners' alleged harms.

Petitioners' argument that they would suffer harm from being deprived of monitoring data also fails. An "information injury" can constitute injury for purposes of Article III standing only if the petitioner has identified "'downstream consequences' from failing to receive the required information." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). An "'asserted informational injury that causes

no adverse effects cannot satisfy Article III.'" *Id.* (citation omitted). Petitioners do not meet the Article III standard based on this alleged harm, let alone the more stringent irreparable harm standard. *See Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) (finding petitioners had standing but did not meet the stricter standard of irreparable harm to secure a preliminary injunction); *see also In re Naval Chaplaincy*, 534 F.3d 756 (D.C. Cir. 2008) (affirming dismissal of action when petitioners failed to adequately allege standing, despite identifying a per se instance irreparable harm under the preliminary injunction standard). Petitioners do not identify downstream adverse effects or concrete harm that they or their members would suffer from the lack of monitoring data. Petitioners also do not explain why any informational injury cannot be remedied after litigation, a factor that "'weighs heavily against a claim of irreparable harm.'" *Wis. Gas*, 758 F.2d at 674 (citation omitted).

### C. The Public Interest and Balance of Equities Do Not Favor a Stay.

The public interest and balance of equities factors merge when an injunction against government action is sought. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). When "'balanc[ing] the competing claims of injury,'" a reviewing court "'must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citation omitted). Both factors cut against a stay.

A stay of the IFR would impose significant harm on the cokemaking industry and the public interest. As EPA explained, the IFR will result in compliance cost savings of between $4.2 million and $4.4 million per year. *See* 90 Fed. Reg. at 30,003. If a stay is granted, the cokemaking industry, including COETF members and SunCoke, will begin incurring these compliance costs immediately to begin the multiyear process to achieve compliance with the 2024 Final Rule. This effort will be futile, as EPA recognized, because compliance is impossible within less than three years. What is more, these compliance costs may well be wasted because EPA has expressed its intention to reconsider the 2024 Final Rule's requirements. In sum, granting a stay would force these companies to engage in extremely costly and time-intensive modifications to their current manufacturing, all for a rule that EPA may repeal or significantly amend in the near future.

Granting a stay would also impair the public interest due to the significant role that cokemaking plays in the economy and its implications for national security. As already noted above, coke is an essential ingredient in the production of steel that is used throughout the economy to make products such as automobiles, military equipment, pipelines, construction materials, railroads, and other critical infrastructure. Throwing the entire cokemaking industry into immediate non-compliance would certainly have implications for these industries as steelmakers may not be able to obtain the coke that they need to keep producing the steel our

economy needs. There also would be implications for national security. As a recent Presidential Proclamation explained, maintaining the domestic steel industry and decreasing the Nation's reliance on steel imports is an important national security priority. *See* Proclamation No. 10947, *Adjusting Imports of Aluminum and Steel into the United States* (June 3, 2025), *reprinted in* 90 Fed. Reg. 24,199 (June 9, 2025).

Petitioners' alleged harms, by contrast, are entirely speculative and unsupported, *supra* Part II.B., and are thus outweighed by the concrete harm to COETF and its members, SunCoke, and the public interest. *See Amoco*, 480 U.S. at 545 (finding environmental harm that was "not at all probable" outweighed by the fact that company had committed approximately $70 million).

## CONCLUSION

Petitioners' motion should be denied.

DATED: September 18, 2025

Respectfully submitted,

/s/ Jeffrey A. Knight (with permission)

/s/ Matthew Z. Leopold

Jeffrey A. Knight
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
jeffrey.knight@pillsburylaw.com
(202) 663-8000
*Counsel for Movant Intervenor-Respondents American Coke and Coal Chemicals Institute and Coke Oven Environmental Task Force*

Matthew Z. Leopold
E. Carter Chandler Clements
Erica N. Peterson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
mleopold@hunton.com
eclements@hunton.com
epeterson@hunton.com
(202) 955-1500
(*Additional counsel listed on following page*)

Elbert Lin
HUNTON ANDREWS KURTH LLP
951 East Byrd Street, East Tower
Richmond, Virginia 23219
elin@hunton.com
(804) 788-8200

*Counsel for Movant Intervenor-Respondent SunCoke Energy, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27(d)(2) and 32(g) of the Federal Rules of Appellate Procedure, and D.C. Circuit Rules 27(a)(2) and 32(a), the undersigned certifies that the accompanying Proposed Opposition of Movant Intervenor-Respondents to Petitioners' Motion for Summary Vacatur or, in the Alternative, A Stay Pending Judicial Review has been prepared using 14-point, Times New Roman typeface and is double-spaced (except for headings and footnotes). The document is proportionally spaced and contains 4,486 words exclusive of the accompanying documents excepted from the word count under Federal Rule of Appellate Procedure 27(a)(2)(B), (d)(2).

/s/ Matthew Z. Leopold
Mattew Z. Leopold
*Counsel for Movant Intervenor-*
*Respondent SunCoke Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September 2025, the foregoing was filed electronically through the Court's CM/ECF system which will serve all ECF-registered counsel.

/s/ Matthew Z. Leopold
Matthew Z. Leopold
*Counsel for Movant Intervenor-*
*Respondent SunCoke Energy, Inc.*