## <u>ORAL ARGUMENT NOT YET SCHEDULED</u>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-1166

GASP, *et al.*,
                                        *Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,
                                        *Respondents*.

Petition for Review of Final Administrative Action of the
United States Environmental Protection Agency

## REPLY IN SUPPORT OF MOTION FOR SUMMARY VACATUR OR,
## IN THE ALTERNATIVE, A STAY PENDING JUDICIAL REVIEW

/s/ *Tosh Sagar*
Tosh Sagar
Adrienne Y. Lee
Kevin Breiner
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
tsagar@earthjustice.org
alee@earthjustice.org
kbreiner@earthjustice.org

*Counsel for GASP, Hoosier Environmental
Council, Just Transition Northwest Indiana,
PennFuture, and Sierra Club*

*/s/ David Bookbinder*
David Bookbinder
Director of Law and Policy
Environmental Integrity Project
888 17th Street NW, Suite 810
Washington, D.C. 20006
(202) 469-3151
dbookbinder@environmentalintegrity.org

Haley Lewis
Environmental Integrity Project
888 17th Street NW, Suite 810
Washington, D.C. 20006
(202) 263-4449
hlewis@environmentalintegrity.org

*Counsel for Clean Air Council and PANIC*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I.      The Interim Rule Must Be Summarily Vacated Because There Is No
        Emergency that Justifies Bypassing Notice-and-Comment Rulemaking....... 3

        A.      Coke Oven Communities satisfy the legal standard for summary
                vacatur because EPA's action is "directly contrary" to Circuit
                precedent. .....................................................................................3

        B.      Industry's countervailing arguments misread Circuit precedent and
                invent a rationale that EPA did not adopt. ...........................................8

                1.      This Court has interpreted impracticability to require an
                        emergency. ...................................................................8

                2.      Industry's argument that notice-and-comment rulemaking would
                        have "impeded" EPA's function is wrong on the law and the facts
                        .................................................................................11

                3.      EPA never found that the coke industry would be "imperiled."...14

        C.      Industry's equitable arguments have no relevance to the question of
                summary vacatur and are wrong on the facts. ...................................15

II.     The Court should not stay its hand based on EPA's promised withdrawal..17

CONCLUSION.....................................................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.................20

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ..........................................21

CERTIFICATE OF PARTIES...............................................................................22

CERTIFICATE OF SERVICE ..............................................................................23

(Page 3 of Total)

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Fed'n of Gov't Emp., AFL-CIO v. Block*,
 655 F.2d 1153 (D.C. Cir. 1981)....................................................................5, 11

*Council of Southern Mountains, Inc. v. Donovan*,
 653 F.2d 573 (D.C. Cir. 1981)......................................................................9, 12

*Env't Def. Fund v. EPA*,
 716 F.2d 915 (D.C. Cir. 1983).......................................................3, 5, 6, 7, 8

*Jifry v. FAA*,
 370 F.3d 1174 (D.C. Cir. 2004)....................................................................9, 10

*Mack Trucks, Inc. v. EPA*,
 682 F.3d 87 (D.C. Cir. 2012).........................................4, 7, 9, 12, 14, 15, 17, 18

*Mid–Tex Electric Coop. v. FERC*,
 822 F.2d 1123 (D.C. Cir. 1987)..................................................................10, 11

*Nat'l Ass'n of Farmworkers Orgs v. Marshall*,
 628 F.2d 604 (D.C. Cir. 1980)........................................................................5, 6

*SEC v. Chenery Corp.*,
 318 U.S. 80 (1943)...........................................................................................14

*SEC v. Chenery Corp.*,
 332 U.S. 194 (1947).........................................................................................14

*Sorenson Commc'ns, Inc. v. FCC*,
 755 F.3d 702 (D.C. Cir. 2014)........................................................4, 7, 9, 12, 15

*State of N.J., Dept. of Env't Protection v. EPA*,
 626 F.2d 1038 (D.C. Cir. 1980).........................................................................16

*Tennessee Gas Pipeline Co. v. FERC*,
 969 F.2d 1141 (D.C. Cir. 1992)........................................................................14

*U.S. Dep't of Health & Hum. Servs. v. Fed. Lab. Rels. Auth.*,
 No. 92-1012, 1992 WL 390891 (D.C. Cir. Dec. 10, 1992)..............................3, 4

ii

*U.S. Dep't of Interior v. Fed. Lab. Rels. Auth.*,
No. 90-1057, 1991 WL 80511 (D.C. Cir. May 2, 1991) .......................................3

*Util. Solid Waste Activities Grp. v. EPA*,
236 F.3d 749 (D.C. Cir. 2001).......................................................4, 7, 8, 9, 12, 15

**STATUTES**

5 U.S.C. § 553(b)(3)(B) ................................................................................11

**FEDERAL REGISTER NOTICES**

90 Fed. Reg. 28,904 (July 2, 2025)........................................................17

90 Fed. Reg. 29,485 (July 3, 2025)........................................................17

90 Fed. Reg. 29,997 (July 8, 2025)...................................................10, 15

90 Fed. Reg. 35,966 (July 31, 2025)......................................................18

iii

# <u>GLOSSARY</u>

Pursuant to D.C. Circuit Rule 28(a)(3), the following is a glossary of

acronyms and abbreviations used in this brief:

| | |
|---|---|
| 2024 Rule | 89 Fed. Reg. 55,684 (July 5, 2024) |
| Coke Oven Communities or Communities | Clean Air Council, GASP, Hoosier Environmental Council, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club |
| EPA | United States Environmental Protection Agency |
| Industry | Movant Intervenors SunCoke Energy, Inc., American Coke and Coal Chemicals Institute, and Coke Oven Environmental Task Force |
| Interim Rule | 90 Fed. Reg. 29,997 (July 8, 2025) |

iv

## INTRODUCTION

This case presents the question of whether a federal agency can undo policy without public input, simply to relieve an industry from modest and foreseeable regulatory requirements. Under existing Circuit precedent, the answer is clearly no, because there was no emergency that made notice-and-comment rulemaking impracticable.

EPA does not dispute this; indeed, it has abandoned any defense of its unlawful Interim Rule. In doing so, EPA confirms that there was never any emergency that justified it and demonstrates why notice-and-comment rulemaking was so necessary in the first place. EPA justified the Interim Rule based on alleged compliance concerns raised by Industry. But those compliance concerns evaporated on first contact with adverse comments submitted in response to the Interim Rule. Faced with those comments, EPA now reaffirms its prior finding that coke ovens can comply with the 2024 Rule without installing any new controls, proving the delay in compliance dates was never needed.[1]

---

[1] "EPA does not believe that the information before it establishes that the applicable air toxics standards would have been exceeded if the compliance dates were not to have been changed, regardless whether facilities have initiated or completed installation of the additional controls that EPA believed could not be installed before the relevant compliance dates." EPA Response to Petitioners' Motion for Summary Vacatur ("EPA Resp."), Doc. 2135704 at 4; *see* Coke Oven Communities' Motion for Summary Vacatur, Doc. 2129597 at 22 ("Communities' Mot.") (citing to EPA's prior findings).

1

Industry[2] steps into the breach, advancing several baseless arguments. First, Industry ignores on-point Circuit precedent that forecloses EPA's action here. Second, Industry attempts to rewrite decades of Circuit decisions that require an emergency to invoke impracticability. Third, Industry claims the Interim Rule was a necessary response to new information it submitted in late May 2025. But EPA's own contemporaneous memos show that EPA decided to promulgate the Interim Rule weeks earlier, then solicited information from Industry to help manufacture a justification. Fourth and finally, Industry invents a *post-hoc* and unsubstantiated rationale for the Interim Rule—that on-schedule compliance with the 2024 Rule would imperil the entire coke oven industry.

The Interim Rule must be vacated under Circuit precedent, notwithstanding EPA's request that this Court stay its hand.

---

[2] Movant Intervenors SunCoke Energy, Inc., American Coke and Coal Chemicals Institute, and Coke Oven Environmental Task Force.

# ARGUMENT

## I.    The Interim Rule Must Be Summarily Vacated Because There Is No Emergency that Justifies Bypassing Notice-and-Comment Rulemaking.

### A.    Coke Oven Communities satisfy the legal standard for summary vacatur because EPA's action is "directly contrary" to Circuit precedent.

Industry argues that the Communities have not met their burden to obtain summary vacatur, because the merits are "hardly so clear as to justify summary action." Industry Opp'n at 4. But EPA's action is directly contrary to two, robust lines of precedent barring an agency from invoking "impracticability": (1) where there is no emergency; or (2) based on the imminence of an administrative deadline, before which the agency had time to conduct notice-and-comment rulemaking. Moreover, in *Env't Def. Fund v. EPA*, 716 F.2d 915, 921 (D.C. Cir. 1983) ("*EDF*"), this Court rejected the use of good cause under "virtually identical circumstances," and Industry does not even attempt to distinguish that case from the circumstances here. *Contra* Industry Opp'n at 5.

1.    Summary vacatur is appropriate here, because the Court's precedents are directly on point and resolve the issues in the case. *U.S. Dep't of Interior v. Fed. Lab. Rels. Auth.*, No. 90-1057, 1991 WL 80511, at *1 (D.C. Cir. May 2, 1991) (granting summary vacatur where prior Circuit decision was "dispositive of the issues in these cases" (emphasis added)); *U.S. Dep't of Health & Hum. Servs.*

3

*v. Fed. Lab. Rels. Auth.*, No. 92-1012, 1992 WL 390891, at *1 (D.C. Cir. Dec. 10, 1992) ("*HHS*") (granting summary reversal where the underlying agency decision was "<u>directly contrary</u>" to the Circuit's prior opinion (emphasis added)).

2.      EPA's invocation of impracticability to avoid notice-and-comment rulemaking is "directly contrary" to two robust lines of Circuit precedent. *HHS*, 1992 WL 390891, at *1.

First, this Court has repeatedly said that an agency's use of impracticability "should be limited to emergency situations." *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001) ("*USWAG*"); *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (same); *Sorenson Commc'ns, Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014) (rejecting invocation of impracticability due to "lack[] [of] record support proving [an] emergency").

Here, no party asserts there was an emergency. In the Interim Rule, EPA did not even attempt to identify an emergency. Instead, EPA relied on purported compliance challenges, which it had ample time to consider in notice-and-comment rulemaking and which EPA now—for the third time—finds to be unsubstantiated. Communities' Mot. at 15-16 (describing EPA's prior findings); EPA Resp. at 5-6 ("EPA does not believe . . . the applicable air toxics standards would have been exceeded absent the compliance date extensions."). Similarly, Industry is unable to point to any record findings of an emergency, so instead tries

4

to rewrite this Court's precedents to eliminate the emergency requirement altogether. *See infra* at 8-11. Because EPA did not even claim, let alone establish, the existence of an emergency, its invocation of impracticability was directly contrary to this Court's precedents.

Second, Circuit precedent also establishes that EPA cannot delay acting for months and then invoke an imminent deadline to establish impracticability. An agency cannot "simply wait until the eve of a[n] . . . administrative deadline, then raise up the good cause banner and promulgate rules without following [statutory] procedures." *EDF*, 716 F.2d at 921; *see Am. Fed'n of Gov't Emp., AFL-CIO v. Block*, 655 F.2d 1153, 1158 (D.C. Cir. 1981) ("*AFGE*") ("[T]he mere existence of deadlines for agency action . . . does not in itself constitute good cause.").

Here, EPA had 10 months to reconsider the 2024 Rule's compliance deadlines, more than sufficient time to conduct notice-and-comment rulemaking under this Court's precedent. *Nat'l Ass'n of Farmworkers Orgs v. Marshall*, 628 F.2d 604, 622 (D.C. Cir. 1980) ("*Farmworkers*") (rejecting good cause claim where agency waited nearly seven months before modifying rule). Indeed, EPA had ample time to meet with and solicit comments from Industry prior to issuing the Interim Rule. *See, e.g.,* May 6, 2025, Email from J. Witt to D. Ailor (asking "specifically . . . why three years would be needed to comply with these standards") (available at https://www.regulations.gov/document/EPA-HQ-OAR-

5

2002-0085-1635) (Exh. 1, at EXH005); *infra*, at 13 (identifying months-long back-and-forth between EPA and Industry). Addressing a similar record, *Farmworkers* found that where an agency "apparently found it quite possible to consult" with only interested parties selected by the agency, the Court "cannot sustain the suspension of notice and comment to the general public which includes parties, such as plaintiffs who are primarily concerned with the health of their children." 628 F.2d at 622.[3]

In short, EPA's action here is directly contrary to two robust lines of Circuit precedent and should be summarily vacated.

3.      Moreover, Industry ignores that the Communities have identified a controlling Circuit precedent in which the Court rejected the use of good cause in "virtually identical circumstances." *Contra* Industry Opp'n at 5.

In *EDF*, this Court rejected EPA's reliance on an impending compliance deadline to invoke the good cause exception to significantly delay the deadlines. *EDF*, 716 F.2d at 920. There, as here, EPA waited until the eve of a compliance deadline and then claimed that acting immediately "was essential . . . before the

---

[3] Indeed, EPA's actions here confirm that it had sufficient time to undertake notice-and-comment rulemaking and reject Industry's spurious compliance arguments. EPA took comment on the Interim Rule beginning on July 8, 2025, and by mid-September, determined that Industry's purported compliance challenges were unsubstantiated. EPA Resp. at 4 (finding Interim Rule not justified "[u]pon review of the submissions EPA received since issuance of the Interim Final Rule").

6

regulated community expended resources" to comply. *Id.* There, as here, the agency had ample time to act on its compliance concerns through notice-and-comment-rulemaking, but "simply wait[ed] until the eve of an administrative deadline [to] raise up the good cause banner." *Id.* (citation modified). The Court reasoned that EPA's invocation of good cause was "baseless" in light of the "agency's own delay" in acting prior to the deadline. *Id.* That decision fully resolves this case.

Yet, despite the Communities' extensive reliance on *EDF*, Industry makes no mention of it. *Compare* Communities' Mot. at 11-13*, with* Industry Opp'n at 1-20 (absence). Industry's inability to distinguish that controlling precedent from this case speaks volumes.

4.    Finally, Industry ignores the robust Circuit precedent, including the very decisions cited by Industry, establishing that vacatur is the proper remedy where an agency improperly invokes good cause to avoid notice-and-comment rulemaking. Industry Opp'n at 4-5; *see Mack Trucks*, 682 F.3d at 95-96 (vacating interim final rule where there was no emergency justifying good cause); *USWAG*, 236 F.3d at 749 (vacating rule where there was no emergency justifying good cause); *Sorenson*, 755 F.3d at 710 (vacating interim order); *see also* Industry Opp'n at 6-9 (citing those cases).

7

**B.**     **Industry's countervailing arguments misread Circuit precedent and invent a rationale that EPA did not adopt.**

      **1. This Court has interpreted impracticability to require an emergency.**

Industry argues that the Communities "misread" this Court's precedents to impose an "emergencies-only requirement." Industry Opp'n at 9.

1.     Industry is wrong: "The exception is not an 'escape clause'; <u>its use 'should be limited to emergency situations</u>.'" *USWAG*, 236 F.3d 754 (quoting *AFGE*, 655 F.2d at 1156 (emphasis added)); *see also EDF*, 716 F.2d at 920 (same). This rule is in lockstep with other Circuits. Communities' Mot. at 11 n. 3 (listing cases).

This Court has repeatedly said that skipping notice-and-comment rulemaking <u>requires</u> an emergency and rejected invocations of "impracticability" where there was no emergency. *Contra* Industry Opp'n at 8-9. Industry posits that an emergency is sufficient but not necessary, yet the very cases it cites, including *USWAG*, *Mack Trucks*, and *Sorenson*, prove Industry wrong. *See* Industry Opp'n at 7, 9 (relying on *USWAG*, *Mack Trucks*, and *Sorenson*).

In *USWAG,* the Court held that "[impracticability] cannot possibly apply here. There is no indication that [the preexisting rule], as it stood before the amendment [issued without notice-and-comment rulemaking], <u>posed any threat to</u>

8

the environment or human health or that some sort of emergency had arisen." 236 F.3d at 755 (emphasis added).

In *Mack Trucks*, the Court rejected the agency's invocation of impracticability because "[t]he [Interim Rule] does not stave off any imminent threat to the environment or safety or national security. It does not remedy any real emergency at all." 682 F.3d at 93 (emphasis added).

So too in *Sorenson*, where the Court stated that "[l]acking [any] record support proving the emergency . . . the Commission erred in promulgating the Interim Order without notice and comment." 755 F.3d at 707 (emphasis added).

Conversely, this Court has allowed an agency to bypass notice-and-comment rulemaking in truly exigent circumstances, including where it was necessary to promulgate a rule to save the lives of miners, or to safeguard against imminent national security threats. *Council of Southern Mountains, Inc. v. Donovan*, 653 F.2d 573, 581 (D.C. Cir. 1981) (bypassing notice-and-comment rulemaking for rule that was of "life-saving importance" to miners); *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (bypassing notice-and-comment rulemaking was "necessary to prevent a possible imminent hazard to aircraft, persons, and property within the United States").

Put simply, this Court has repeatedly held an agency's use of "good cause" was unlawful because there was no emergency.

9

2.     Industry also attempts to rewrite this Court's precedent by relying on cases with inapposite facts or that do not address impracticability at all.

First, Industry points to *Jifry*, where the Court held that impracticability exists "in emergency situations, or where delay could result in serious harm." Industry Opp'n at 9  (quoting *Jifry v. FAA*, 370 F.3d at 1179). But *Jifry* equated "serious harm" to a "possible imminent hazard to aircraft, persons, and property within the United States," in the context of aviation regulations adopted in the wake of the September 11, 2001, terror attacks. In equating "serious harm" to an "imminent hazard," *Jifry* does not establish some additional basis, beyond an emergency, for invoking impracticability. And far from responding to the worst terrorist attack in our nation's history, EPA's Interim Rule here responds to purported compliance concerns that EPA had ample time to consider and ultimately found were unsubstantiated thrice over. Thus, Industry's reliance on *Jifry* is misplaced.

Second, Industry invokes caselaw that only discusses the meaning of "good cause" as a general matter and does not address the more specific requirements for invoking "good cause" on "impracticability" grounds, the only justification EPA invoked here. 90 Fed. Reg. 29,997, 30,002 (July 8, 2025) (invoking "impracticability" exception to notice-and-comment rulemaking); Industry Opp'n at 7-9 (relying on *Mid–Tex Electric Coop. v. FERC*, 822 F.2d 1123, 1132-37 (D.C.

10

Cir. 1987) and *AFGE*, 655 F.2d at 1156-58). Neither case discusses the

"impracticability" standard, as both only use the term when quoting the statutory

standard for "'good cause.'" *Mid–Tex*, 822 F.2d at 1131 (quoting 5 U.S.C.

§ 553(b)(3)(B)); *AFGE*, 655 F.2d at 1155-56, 1158 (same). Instead, they focus on

the broader question of "whether [the agency] has 'good cause.'" *E.g., Mid–Tex*,

822 F.2d at 1130 (describing "the procedural question" presented).[4] Whatever

"good cause" might mean as a general matter cannot trump this Court's holdings

regarding "impracticability."

## 2. Industry's argument that notice-and-comment rulemaking would have "impeded" EPA's function is wrong on the law and the facts.

The Communities' Motion demonstrates that EPA had nearly 10 months to

address compliance concerns raised in Industry's reconsideration petitions, and

that impracticability cannot result from EPA's own delay in considering those

petitions. Communities' Mot. at 12-13. Industry responds that the Interim Rule was

a necessary response to last-minute evidence it submitted in late May 2025,

demonstrating that compliance with the 2024 Rule was impossible. Industry Opp'n

at 6-7. That is wrong as a matter of law, but more importantly it ignores that EPA

---

[4] Moreover, *AFGE* did involve an "emergency." 655 F.2d at 1157, 1154-55 ("[T]he promulgation of <u>emergency regulations</u> by [an agency] was a reasonable and perhaps inevitable response to [an] injunctive court order," that provided less than two weeks to comply. (emphasis added)).

11

(with Industry approval) had already made the decision to delay the deadlines via an Interim Rule. The late-May submissions were simply part of a two-month scramble to gin up evidence to support that pre-ordained outcome.

1.    Industry incorrectly claims that notice-and-comment rulemaking is impracticable "when an agency finds that due and timely execution of its functions would be impeded," such as "when an agency learns too late that compliance is not feasible." Industry Opp'n at 6 (relying on *USWAG*, 236 F.3d at 754 and *Donovan*, 653 F.2d at 573).

Neither of the precedents cited by Industry support that proposition. In *USWAG*, this Court rejected the use of good cause in the absence of an emergency. *Supra*, at 8-9. And in *Donovan*, this Court approved the use of good cause, because the rule was of "life-saving importance" to mine workers. 653 F.2d at 581.[5]

2.    Moreover, the record confirms that EPA did not "learn[] too late" about compliance problems based on new Industry information submitted in late May. *Contra* Industry Opp'n at 6. EPA had been aware of Industry's purported compliance issues since before EPA promulgated the 2024 Rule and certainly no later than Industry's September 2024 reconsideration petitions. *See* Communities' Mot. at 15-17, 22-23.

---

[5] That is how this Court has described *Donovan's* holding. *Mack Trucks*, 682 F.3d at 93; *Sorenson*, 755 F.3d at 706.

And EPA's own memoranda establish that EPA had already decided to issue an interim final rule <u>weeks</u> before it received the late-May communications. Indeed, EPA memorialized a meeting on May 5, 2025, "between the EPA and representatives of the Coke Ovens Environmental Task Force (COETF) to discuss the forthcoming Interim Final Rule (IFR) to move all upcoming compliance dates . . .  to July 5, 2027." June 3, 2025, Memorandum, (available at: https://www.regulations.gov/document/EPA-HQ-OAR-2002-0085-1636) (Exh. 2, at EXH007). After that decision had been taken, EPA officials then sought information to corroborate the purported compliance concerns. May 6, 2025, Email from J. Witt to D. Ailor (Exh. 1, at EXH005).

In late June 2025, just two weeks before issuing the Interim Rule, EPA was still searching for evidence that there would be actual compliance challenges, desperately requesting proof from Industry:

> "One thing that would really help us out at this stage is if you could provide <u>any examples</u> of instances where a facility cannot comply with a standard without installing controls, along with how you all know that facility can't meet it (either through modeling or through actual observation/testing), what controls would be needed, and how long it would take to get controls in place. I know you all had some overarching rationale for extending the deadlines, but if there are <u>any</u> specific examples you can point to, that would be very helpful."

June 23, 2025, Email from J. Witt to K. Batten (emphasis added) (available at: https://www.regulations.gov/document/EPA-HQ-OAR-2002-0085-1638) (Exh. 3, at EXH009); *see also* June 25, 2025, Email from D. Ailor to J. Witt (available at: https://www.regulations.gov/document/EPA-HQ-OAR-2002-0085-1640) (Exh. 4, at EXH017).

13

### 3. EPA never found that the coke industry would be "imperiled."

Because EPA did not establish impracticability, Industry invents a new rationale, claiming that on-schedule compliance with the 2024 Rule would "so impact the cokemaking industry [] that [the] entire industry and its customers [would be] imperiled." Industry Opp'n at 7 (citation modified).

That rationale fails because it is an invention of Industry that EPA never adopted, and it is "a simple but fundamental rule of administrative law" that a court reviewing an agency action "must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("*Chenery II*") (summarizing the holding in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ("*Chenery I*")). That prohibition on considering *post-hoc* rationales applies when reviewing whether good cause exists. *Mack Trucks*, 682 F.3d at 95 ("To the extent this is an argument not preserved by EPA in the IFR, we cannot consider it." (citing *Chenery I*)); *Tennessee Gas Pipeline Co. v. FERC*, 969 F.2d 1141, 1145-46 (D.C. Cir. 1992) (agency counsel's explanation at oral argument "does not excuse the [agency's] failure to cite such examples in support of its claim of a good cause exception.").

Industry claims that timely complying with the 2024 Rule would have imperiled the entire industry, but tellingly, Industry fails to cite any EPA finding supporting its claim. Industry Opp'n at 7-9 (absence). Indeed, Industry fails to cite

14

to any EPA statements whatsoever in this section of its brief. *Id.* (absence). If EPA believed that timely compliance with the 2024 Rule would imperil the industry, that would be obvious from the face of the Interim Rule. But the Interim Rule is silent as to Industry's prospects, only speaking of the possibility of non-compliance. 90 Fed. Reg. at 30,002.

And the possibility of non-compliance is a far cry from the possibility of industry collapse. Many coke ovens have a long-standing history of routinely violating existing Clean Air Act standards, yet that non-compliance does not prevent them from successfully operating. *See* Communities' Mot. at 4-5. Thus, there is no reason to read EPA's limited findings regarding the threat of non-compliance to mean that EPA found the entire industry would be imperiled.

### C. Industry's equitable arguments have no relevance to the question of summary vacatur and are wrong on the facts.

Industry argues that summary vacatur should be denied because it would place Industry into non-compliance with the 2024 Rule, "while doing nothing to address any harm to Petitioners." Industry Opp'n at 5.

1. Vacating a rule unlawfully promulgated without notice-and-comment rulemaking is the standard remedy, and Industry does not identify a single case in which this Court has required, let alone engaged in, such equitable balancing before doing so. This Court's precedents are to the contrary. *See, e.g., Mack Trucks*, 682 F.3d at 95-96; *USWAG*, 236 F.3d at 749; *Sorenson*, 755 F.3d at 710.

15

2.      Industry's arguments that there are high compliance costs without the Interim Rule are wrong. EPA found this argument without merit twice before and now reaffirms that regulated facilities do not need to install expensive controls to comply with the 2024 Rule. EPA Resp. at 4.

3.      By contrast, the Communities have been waiting for EPA to update standards for coke ovens for over a decade and the Interim Rule unlawfully delayed these long overdue standards. The Communities' members live in close proximity to coke ovens, putting them at higher risk of exposure than the general public. *See* Communities' Mot. at 8 (citing to declarations). Industry simply ignores the negative impacts of coke oven emissions on their health, well-being, and daily lives, and the value of preventing any additional emissions and exposure. *See id.* at 19-20.

In bypassing notice-and-comment rulemaking to promulgate the Interim Rule, EPA arbitrarily endangered Coke Oven Communities' health. Indeed, this case demonstrates why notice-and-comment rulemaking is "one of Congress's most effective and enduring solutions" to the "dangers of arbitrariness and irrationality in the formulation of rules." *State of N.J., Dept. of Env't Protection v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980) (citation modified). EPA hurriedly adopted the Interim Rule based solely on Industry's renewed concerns regarding compliance, concerns which EPA had previously determined were unfounded.

16

After those Industry arguments were subjected to scrutiny from commenters, EPA again rejected them.

## II.   The Court should not stay its hand based on EPA's promised withdrawal.

Offering no defense of its unlawful Interim Rule, EPA argues this Court should stay its hand until EPA has issued the withdrawal. EPA Resp. at 5-6.[6]

This Court should decline that invitation and vacate the Interim Rule. Faced with analogous circumstances, this Court has done just that, vacating an unlawfully promulgated interim final rule despite concerns similar to those EPA raises here. *Mack Trucks*, 682 F.3d at 95 ("We do recognize the pending final rule means our vacatur of the IFR on these procedural grounds will be of limited practical impact.").

This case is more egregious. Industry and EPA jointly schemed to unlawfully eliminate compliance obligations for several months. That scheme mirrors recent EPA actions using interim final rules to delay Clean Air Act standards for other source categories, based on EPA's changed view about whether industry can timely comply with the standards. *See* 90 Fed. Reg. 28,904, 28,907 (July 2, 2025) (delaying aerosol coatings emission standards); 90 Fed. Reg. 29,485,

---

[6] The Communities agree that the Court need not rule on the alternative request to stay the Interim Rule, because a withdrawal will likely obviate the need for such prospective relief during the pendency of the litigation.

17

29,489 (July 3, 2025) (delaying steel mills emission standards); 90 Fed. Reg. 35,966, 35,979-80 (July 31, 2025) (delaying oil and gas sector emission standards). Accordingly, the Court should vacate this unlawful action, denying Industry the benefits of that illegal bargain and making clear to EPA that it cannot render the procedural requirements of the Clean Air Act of "no use." *Mack Trucks*, 682 F.3d at 95.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully ask that the Court grant their motion for summary disposition and vacate EPA's unlawful Interim Rule.

Dated: September 30, 2025                     Respectfully submitted,

*/s/ Tosh Sagar*
Tosh Sagar
Adrienne Y. Lee
Kevin Breiner
Earthjustice
1001 G Street, NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
tsagar@earthjustice.org
alee@earthjustice.org
kbreiner@earthjustice.org

*Counsel for GASP, Hoosier Environmental Council, Just Transition Northwest Indiana, PennFuture, and Sierra Club*

*/s/ David Bookbinder*
David Bookbinder

18

Director of Law and Policy Environmental
Integrity Project
888 17th Street NW, Suite 810
Washington, D.C. 20006
(202) 469-3151
dbookbinder@environmentalintegrity.org

Haley Lewis
Environmental Integrity Project
888 17th Street NW, Suite 810
Washington, D.C. 20006
(202) 263-4449
hlewis@environmentalintegrity.org

*Counsel for Clean Air Council and PANIC*

19

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Reply contains 3,897 words, as counted by counsel's word processing system, and thus complies with the 3,900-word limit set forth in this Court's Order of September 22, 2025.

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365** using **size 14 Times New Roman** font.

Dated: September 30, 2025

*/s/ Tosh Sagar*
Tosh Sagar

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and D.C. Circuit Rule 26.1, Petitioners Clean Air Council, GASP, Hoosier Environmental Council, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club state that they are non-profit environmental organizations without any parent corporation or stock.

Dated: September 30, 2025

*/s/ Tosh Sagar*
Tosh Sagar

21

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), I certify that the parties to this case are set forth below.

Petitioners: Petitioners in this case are Clean Air Council, GASP, Hoosier Environmental Council, Just Transition Northwest Indiana, PANIC, PennFuture, and Sierra Club.

Respondents: Respondents in this case are the United States Environmental Protection Agency ("EPA") and Lee Zeldin, in his official capacity as Administrator of the EPA.

Intervenors: Movant Intervenors in this case are American Coke and Coal Chemicals Institute, Coke Oven Environmental Task Force, and SunCoke Energy, Inc.

Amici Curiae: None at present.

Dated: September 30, 2025

*/s/ Tosh Sagar*
Tosh Sagar

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2025, I filed the foregoing motion on Respondents with the Court's CMS/ECF system, which will notify each party.

Dated: September 30, 2025

*/s/ Tosh Sagar*
Tosh Sagar

23